No. 47,760

STATE OF KANSAS, *Appellee*, v. JACK R. FARRIS, *Appellant*.

(542 P. 2d 725)

Opinion filed November 8, 1975.

*Russell Shultz*, of Wichita, argued the cause and was on the brief for the appellant.

*Robert L. Kennedy, Jr.*, assistant district attorney, argued the cause, and *Curt T. Schneider*, attorney general, and *Keith Sanborn*, district attorney, and *Stephen M. Joseph*, assistant district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: Jack R. Farris appeals from jury convictions on one count of aggravated assault on a law enforcement officer (K. S. A. 21-3411) and two counts of unlawful possession of firearms (K. S. A. 21-4204 [1] [*b*]). These convictions arose out of two separate inci-

dents but were consolidated and tried together. The first incident occurred on July 31, 1972, the second on February 19, 1973.

On July 31, 1972, Farris was residing with his common law wife, Annette Brown, in a mobile home located in a trailer park in Wichita, Kansas. There was evidence that Farris had been drinking with a friend throughout the day and by 9:30 p. m. he became hostile and unreasonable. He obtained a pistol and began firing it at objects inside the mobile home. The wife slipped out the back door and ran to the office of the manager of the trailer park. The police were summoned and several police officers in uniform, driving marked police cars, appeared in the trailer park and took up positions in front of the Farris mobile home. Officers Anderson and Moriarty, wearing the usual uniforms complete with police caps bearing the insignia of the city police department, positioned themselves behind their police cars which were parked some forty feet from the front of the Farris trailer. Farris came to the door with pistol in hand. He started to walk down the steps then turned and moved back toward the door of the mobile home. Officer Anderson shouted to Farris that he was a police officer and that Farris should throw out his gun and move away from the trailer. In reply Farris exclaimed, "Yeah, Man," and aimed his pistol at Officer Anderson. Anderson was holding a shotgun and quickly fired one shot which struck Farris in the face and knocked him down. Farris was taken to a hospital for treatment and later charged with aggravated assault on a law enforcement officer, unlawful possession of a firearm and one additional felony of which he was acquitted and with which we are not concerned.

Some six months later on February 19, 1973, the police were notified that a man in a Wichita tavern was carrying a firearm on his person. The police arrived at the tavern and found Farris carrying a firearm in his belt under his jacket. He was arrested and charged with unlawful possession of a firearm.

In regard to this later incident Farris testified that he and Melvin Pruitt were going to the tavern to check on a story that a woman was being beaten up by her former husband. On the way Pruitt stopped at his house and obtained the pistol. After they arrived they found no fight in progress so they stayed to drink a little. Later they gathered around a pool table so Pruitt could play pool and Pruitt handed the gun to Farris to keep for him while the pool game was in progress. Farris put the gun in his belt and shortly

thereafter the police arrived and arrested him for unlawful possession of the firearm.

On appeal from his conviction arising from the incident of February 19, 1973, appellant contends he was entitled to defend on the theory of entrapment and the court erred in refusing to instruct thereon. K. S. A. 21-3210 provides:

"Entrapment. A person is not guilty of a crime if his criminal conduct was induced or solicited by a public officer or his agent for the purposes of obtaining evidence to prosecute such person, . . ."

At the trial the arresting officers were cross-examined concerning Pruitt's possible connection with the police department as an informer. However, the officers categorically denied any knowledge of the same and there was no evidence introduced to support such a defense. The defense of entrapment is not available and does not extend to acts of inducement or solicitation by private citizens who are not public officers or acting as agents of public officers. (*State v. Farmer*, 212 Kan. 163, Syl. ¶ 3, 510 P. 2d 180.) When the evidence viewed most favorably to a defendant does not disclose a case of entrapment the trial court is justified in refusing to instruct thereon. (*State v. Hamrick*, 206 Kan. 543, 550, 479 P. 2d 854.)

Appellant complains that the trial court erred in refusing to grant a continuance when his attorney was engaged in the trial of a case in another judicial district on the day set for this trial. He states that his counsel was required to turn over the trial of the other case, then in progress, to an associate in order that his attorney might proceed with appellant's case, and that sufficient time was not granted by the court for his counsel to prepare his defense in the present case.

There is nothing in the record to indicate that a continuance was requested or that an affirmative need for additional time was presented to the trial court. It is incumbent upon the appellant to include in the record on appeal any matter upon which he intends to base a claim for relief. (*Becker v. Rolle*, 211 Kan. 769, Syl. ¶ 4, 508 P. 2d 509.) Appellate courts will review only those questions shown by the record to have been presented to the trial court. (*Gault v. Board of County Commissioners*, 208 Kan. 578, 583, 493 P. 2d 238; *Rich v. Yoder*, 170 Kan. 726, Syl. ¶ 2, 228 P. 2d 533.)

During the trial the state introduced an entire court file covering felony charges lodged against appellant, and indicating that he had been previously convicted of unlawful possession of firearms. Probation on a previous third degree burglary conviction had been

revoked during the proceedings. The file was introduced for the purpose of proving an element of the two current firearm charges. The file contained much extraneous matter including charges on two felony counts which had ended in a mistrial and were later disposed of by a subsequent trial. The appellant earnestly contends the file was of such a nature that it constituted evidence by the state which drew his character and credibility into question in violation of the evidentiary guidelines established in K. S. A. 60-447 and K. S. A. 60-421.

The statute defining the crime of unlawful possession of a firearm (K. S. A. 21-4204 [1] [b]) requires the state to prove that the accused had a firearm with a barrel of less than twelve inches in length in his possession after having been previously convicted of a felony within the preceding five years or had been released from imprisonment for a felony during such period. The court has held that evidence which is otherwise relevant in a criminal prosecution is not rendered inadmissible simply because it may show a crime other than that charged. (*State v. Calvert*, 211 Kan. 174, 505 P. 2d 1110, and *State v. Pierce, et al.*, 208 Kan. 19, 490 P. 2d 584.) An admission by the accused that he committed certain crimes does not prevent the state from presenting separate and independent proof of the crimes admitted. (*State v. Johnson*, 216 Kan. 445, 448, 532 P. 2d 1325.)

The admission of the entire file in this case was not a proper practice for the file contained much extraneous and irrelevant material which could be confusing to a jury. We cannot condone such a practice. An authenticated copy of the journal entry of conviction should have been edited to remove reference to felony charges which were not established and upon which the state was not relying to prove the necessary element of prior conviction of crime. The practice of introducing an entire court file in such cases should be discontinued.

However, in the present case there was independent testimony which established the two prior felonies, the firearms charge and the burglary charge. The accused testified in his own behalf that he had pled guilty to these two prior felonies and was on probation from the burglary conviction at the time the present incidents occurred. The court in its instructions mentioned that evidence had been introduced to show these two prior convictions only as an element of the firearm charges and the evidence was not to be considered nor should the jury infer therefrom any propensity on the

part of the accused to commit crimes. The appellant requested and the court gave an instruction as to other crimes under K. S. A. 60-455 limiting their consideration.

A defendant is entitled to a fair trial but not a perfect one, for there are no perfect trials. The erroneous admission of evidence during a trial does not in every case require a reversal of a conviction but only where it is of such a nature as to affect the outcome of the trial so as to amount to a denial of substantial justice. (*State v. Bly,* 215 Kan. 168, Syl. ¶ 6, 523 P. 2d 397.)

The admission into evidence of an entire criminal file of a district court is not a proper method of establishing a prior conviction of a felony as an element of a firearms charge under K. S. A. 21-4204 (1) (*b*) but under the particular facts of this case the erroneous admission did not amount to a denial of substantial justice so as to constitute reversible error.

The appellant next contends that as to the charge of aggravated assault on a police officer the trial court erred in refusing to instruct on intoxication. He argues that the crime requires a particular intent and that K. S. A. 21-3208 (2) directs that intoxication be taken into consideration in determining the existence of such intent or state of mind.

K. S. A. 21-3208 (2) provides:

"An act committed while in a state of voluntary intoxication is not less criminal by reason thereof, but when a particular intent or other state of mind is a necessary element to constitute a particular crime, the fact of intoxication may be taken into consideration in determining such intent or state of mind."

A crime committed is no less criminal because a particular intent or other state of mind is a necessary element to constitute the crime charged. In *State v. Miles,* 213 Kan. 245, 515 P. 2d 742, cited by appellant, the accused was convicted of burglary under K. S. A. 21-3715. Burglary is there defined as *knowingly* and without authority entering into or remaining within a building or other enclosure, *with intent to commit a felony or theft therein.* A particular intent is set forth in that statute as an element required to complete the crime. In such case an instruction on voluntary intoxication should be given if there is evidence of intoxication.

Another example of a crime requiring a particular intent or state of mind appears in *State v. Seely,* 212 Kan. 195, 510 P. 2d 115. In *Seely* the crime was aggravated battery under K. S. A. 21-3414. The statute in pertinent part reads:

"Aggravated battery is the unlawful touching or application of force to the person of another with *intent to injure* that person or another . . ." (Other elements of the crime listed in the statute are not pertinent to our present discussion. Emphasis supplied.)

Now let us turn our attention to the statute under which the appellant was charged in our present case. K. S. A. 21-3411 provides:

"Aggravated assault of a law enforcement officer is an aggravated assault, as defined in section 21-3410, committed against a uniformed or properly identified state, county or city law enforcement officer while such officer is engaged in the performance of his duty."

K. S. A. 21-3410 referred to above reads:

"Aggravated assault is:
"(a) Unlawfully assaulting or striking at another with a deadly weapon; or
"(b) Committing assault by threatening or menacing another while disguised in any manner designed to conceal identity; or
"(c) Willfully and intentionally assaulting another with intent to commit any felony."

Reading these two statutes together it is apparent that the only particular intent mentioned is under K. S. A. 21-3410 (c) where the assault is "with intent to commit any felony." Paragraphs (a), (b), and (c) of this statute are in the alternative. In our present case the accused was charged under (a) of the statute with unlawfully "assaulting or striking at another with a deadly weapon." When a person is charged under (a) by reason of his use of a deadly weapon no particular intent is required and in such case the provisions of K. S. A. 21-3201 as to general criminal intent apply. The proof required for such general criminal intent is only that the conduct of the person accused consists of a willful or wanton act.

The statute on voluntary intoxication refers in the alternative to crimes requiring a particular intent "or other state of mind." A further argument is made that an assault on a police officer, to be punishable under K. S. A. 21-3411, must be committed against a "uniformed or properly identified" officer and this of necessity presupposes a particular act knowingly directed toward such officer.

The appellant does not deny that the victim was a uniformed city police officer engaged in the performance of his duty. The facts are undisputed that the officers arrived on the scene in a police car bearing the usual insignia. The place of the assault was lighted by a bright overhead yard light similar to those used in farmyards. It was located near the driveway leading up to the Farris mobile home. Officers Anderson and Moriarty were about fifty feet from Farris when he raised his pistol and aimed it at Officer Anderson.

Anderson had verbally identified himself as a police officer and had ordered Farris to put down the gun and move away from the mobile home. Farris responded to these verbal demands by saying, "Yeah, Man," and aiming the gun at the officer.

However, Farris now argues that even though the officers were in full uniform and in plain sight the state was required to prove that he was capable of a state of mind which would permit him to recognize a police officer in uniform so it could be said he knowingly assaulted a police officer. We do not agree.

K. S. A. 21-3411 does not require a particular state of mind. Unlike some of the statutes in other states on the subject, the Kansas statute does not contain the word "knowingly". The California Penal Code, Section 245 (*b*), for instance, provides that every person who commits an assault with a deadly weapon upon the person of an officer, "and who knows or reasonably should know" that such victim is a police officer is guilty of the crime. In contrast our legislature did not see fit to require a particular knowing state of mind.

In *State v. Bradley,* 215 Kan. 642, 527 P. 2d 988, this court examined the question in some depth. The only factual difference in *Bradley* being that the assault was made on an officer out of uniform and the question as to knowledge was raised in deciding what was required to establish that the officer had properly identified himself. In *Bradley* it is said:

"For the reasons hereafter stated we are of the opinion the statutory element 'properly identified' only requires evidence that the law enforcement officer be identified in such a manner that the defendant reasonably should know he is a law enforcement officer. . . .

"First, the language of section 21-3411 does not protect all law enforcement officers; it does not protect officers who are neither uniformed nor properly identified. The statute protects only two classes of officers in the performance of their duties: Uniformed officers and properly identified officers. Since there is no indication in the statute that the legislature intended to provide different standards of protection for these two classes of officers, the general principle of identification envisioned by the legislature and embodied in the disjunctive phrase 'uniformed or properly identified' must be the same for both classes. This general principle is readily discernible from one aspect of the phrase, namely, 'uniformed'. A person *reasonably should know* that one wearing the uniform of a law enforcement officer is such an officer. Applying this general principle of identification to the second aspect of the phrase, it must be concluded that a nonuniformed officer is 'properly identified' when he is identified in such a manner that a person *reasonably should know* the officer is a law enforcement officer." (215 Kan. at p. 646.)

.

Thereafter in the *Bradley* opinion appears a further discussion leading to the conclusion that the term "knowingly" would have been used in section 21-3411 if the legislature had intended that knowledge (scienter) be an element of aggravated assault with a deadly weapon on a law enforcement officer. The failure of the legislature to use the term "knowingly" was compelling evidence that they did not intend to make scienter an element of the crime.

The United States Supreme Court has recently placed a similar interpretation upon a comparable federal statute in *United States v. Feola,* 420 U. S. 671, 43 L. Ed. 2d 541, 95 S. Ct. 1255. The high court noted the absence in the federal statute of any requirement for a particular state of mind such as "knowingly" and held that in order to incur criminal liability under 18 U. S. C. § 111, the actor must entertain merely the general criminal intent to do the acts proscribed, there being no requirement that he be aware of the official status of the person assaulted.

We conclude that no particular intent or other state of mind is a necessary element of the crime proscribed by K. S. A. 21-3411 when the assault consists of an assault with a deadly weapon. Therefore when the accused is so charged with unlawfully assaulting or striking a law enforcement officer, when such officer is in uniform or properly identified as a state, county or city law enforcement officer, and when he is engaged in the performance of his duty no instruction on voluntary intoxication under K. S. A. 21-3208 (2) is required.

The foregoing disposes of the four points raised on appeal and we have found no reversible error. The judgment of the district court is affirmed.

MILLER, J., not participating.