No. 46,126

The State of Kansas, *Appellee* v. Lorenzo Broadus, *Appellant.*

(481 P. 2d 1006)

Opinion filed March 6, 1971.

*Tyler C. Lockett,* of Wichita, argued the cause and was on the brief for the appellant.

*James W. Wilson,* Deputy County Attorney, argued the cause, and *Kent Frizzell,* Attorney General, and *Keith Sanborn,* County Attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

Price, C. J.: Defendant, Lorenzo Broadus, appeals from a conviction of the offense of murder in the first degree (K. S. A. 21-401) and of the offense of maiming and wounding (K. S. A. 21-435). He was sentenced to terms of life imprisonment and for not to exceed five years, respectively—the sentences to run concurrently.

A somewhat sketchy record is presented, but from it—and the briefs of the parties—the undisputed facts are substantially as follows:

Defendant and his wife Delia were involved in a pending divorce action. By court order he was restrained from visiting the home where she and their young child lived. About 5:30 in the morning of March 24, 1968, defendant went to the home—his purpose being

—according to him—to have breakfast with Delia and the child. He had a revolver. Finding the back door locked he lunged at it— ripping the door framing from the wall. He saw a coat belonging to one Warren Grundy—a known "boyfriend" of Delia. Defendant pulled his revolver from his pocket and proceeded to the bedroom. Delia and Grundy were standing by the bed—she in her nightgown and he in his underwear shorts. The child was in the bed. Defendant shot Grundy several times. He then shot Delia at least once—telling her that "he ought to kill her too but that he was not going to because of the kid". He left the house to put the gun in the trunk of his car—but instead threw it in the yard.

Defendant then went back in the house and called the Wichita police. He gave his name and address of the house, and said that he "had caught a man in bed with his wife" and that he had shot them "and that one of them was dead". He requested that an ambulance be sent. Delia then came on the line and said her husband "had shot someone".

Police officers arrived on the scene shortly. Grundy was on the floor—either dead or near death. Delia was wounded in the face and was bleeding. Defendant readily admitted the shootings and stated that "if he had it to do over again he would do it over again". He was taken from the house, placed under arrest—and searched. The "Miranda warning" was read to him. On the way to the police station he stated that he was not much concerned over the relationship between Grundy and Delia—as such—his objection being that their conduct was "in the presence of my kid".

Defendant was charged with the murder of Grundy and the maiming and wounding of Delia.

In addition to what has been stated, evidence at the trial established that prior to the fatal morning in question defendant had bragged about having a gun in the trunk of his car and had threatened to kill both Grundy and Delia.

Defendant was convicted as charged—and now appeals. He raises three points of alleged error.

The first is that it was error to admit testimony of one of the police officers as to on-the-scene statements made by defendant prior to being given the "Miranda warning". On this point the court held a hearing out of the presence of the jury and concluded that voluntary statements by defendant—not in response to interrogation— were admissible. We agree. The statements in question—to the

effect that "he would do it over again"—were not in response to custodial interrogation—but were voluntary spontaneous statements made by defendant upon the arrival of the officers—and were clearly admissible (*State v. Porter*, 201 Kan. 778, 443 P. 2d 360, cert. den. 393 U. S. 1108, 21 L. Ed. 2d 805, 89 S. Ct. 919 and *State v. Law*, 203 Kan. 89, 452 P. 2d 862).

It next is contended the court erred in failing to instruct specifically on justifiable homicide and in not submitting separate forms of verdict on justifiable and excusable homicide.

After instructing on the law of murder in the first and second degrees (K. S. A. 21-401 and 402) the court, in instruction No. 9, instructed the jury that if it failed to find defendant guilty of murder in either the first or second degree then it should determine whether he was guilty of manslaughter in the third degree. Included in this instruction was the statutory definition (K. S. A. 21-413) of that offense—which contains the exception relating to justifiable or excusable homicide. Then, in instruction No. 10, by way of further explanation of the preceding instruction—the court instructed on justifiable and excusable homicide as defined in K. S. A. 21-404 and 405. As to the murder count four forms of verdict were submitted—murder in the first degree—murder in the second degree—manslaughter in the third degree—and "not guilty".

The instructions clearly were correct—both as to substance and the manner and form in which they were given. The same is true of the forms of verdict. Furthermore, defendant's then counsel stated that he had no objection to the instructions given—although he did request an additional one. The record does not disclose the contents of the one requested—but we are told by the state (and it is not disputed) that it did not pertain to either justifiable or excusable homicide.

Defendant's contention with respect to the instructions and forms of verdict is wholly without merit.

Finally, it is contended that as to the murder charge the verdict of the jury was contrary to the law and evidence in that premeditation was not proved.

On this point the jury was instructed—

"The words 'premeditated' and 'with malice aforethought' mean an evil intention resolved in the mind beforehand, or contrived and designed previously. However, to constitute deliberation and premeditation and malice aforethought, no particular time need intervene between formation of the intention and the doing of the act. It is sufficient if they actually existed,

with a full appreciation of the result likely to follow from the act, at the time the act was committed, however short the time of their existence may have been. The word 'maliciously' means with evil design or intention or desire to injure another."

The instruction was a correct statement of the law and was properly given in this case. From the evidence of previous threats to kill—the time and manner of breaking into the house with a gun—the testimony of the only eye witness (Delia)—and defendant's own voluntary statements both at the scene and later—the jury was fully justified in finding the requisite premeditation to constitute murder in the first degree. This contention likewise is without merit.

We find no error. The judgment is affirmed.